```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - X
                                          :    06 Civ. 3329 (WCC)
CANDIDA COSTABILE, as Guardian Ad Litem   :
For Anthony Costabile, and ANTHONY             **ECF CASE**
COSTABILE, Individually,                  :

                       Plaintiffs,        :

        - against -                       :    **OPINION**
                                               **AND ORDER**
COUNTY OF WESTCHESTER, NEW YORK, FRANK    :
BONFONTE, ROY SHAPIRO and ROBERTO
ALANCARTA,                                :

                       Defendants.        :
- - - - - - - - - - - - - - - - - - - - X
```

**A P P E A R A N C E S :**

                                                RESNICK NIRENBERG & CASH, P.C.
                                                **Attorneys for Plaintiffs**
                                                100 Eagle Rock Avenue, Suite 301
                                                East Hanover, New Jersey 07936

GERALD JAY RESNICK, ESQ.

       Of Counsel

                                                CHARLENE M. INDELICATO
                                                WESTCHESTER COUNTY ATTORNEY
                                                **Attorneys for Defendants**
                                                Michaelian Office Building
                                                148 Martine Avenue, Room 600
                                                White Plains, New York  10601

IRMA W. COSGRIFF,
  Senior Ass't County Attorney

       Of Counsel

                                                **Copies E-Mailed to Counsel of Record**

**CONNER, Senior D.J.:**

Plaintiffs, Candida Costabile as *guardian ad litem* for Anthony Costabile and Anthony Costabile, individually, ("plaintiff") bring this action against defendants, County of Westchester ("the County"), Frank Bonfonte ("Bonfonte"), Roy Shapiro ("Shapiro") and Roberto Alancarta ("Alancarta") alleging that defendants, plaintiff's former employers, harassed and terminated him because of his disability in violation of the First and Fourteenth Amendments to the United States Constitution, New York Human Rights Law, N.Y. EXEC. LAW. ART. 15 ("NYHRL") and the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 1211, *et seq*. (the "ADA"). Defendants move to compel production of a private investigator's report pursuant to FED. R. CIV. P. 37(a). For the following reasons, the motion is denied.

## BACKGROUND

Plaintiff was diagnosed with Attention Deficit Hyperactivity Disorder and Nonverbal Learning Disorder as a young child. (2d Am. Complt. ¶ 12.) Starting in June 2002, plaintiff obtained seasonal employment with the County, Department of Parks and Recreation at Glen Island Park, in New Rochelle, New York. (*Id*. ¶ 15.) Plaintiff alleges that, commencing in the summer of 2003 and continuing in the summer of 2004, Alancarta, plaintiff's direct supervisor, subjected plaintiff to numerous acts of discriminatory treatment due to his condition. (*Id*. ¶ 17.) These include: tying plaintiff to a tree with shrink wrap, tying plaintiff to a chair with shrink wrap, tying plaintiff to a rolling chair with shrink wrap and hosing him down with excessive force, tying plaintiff to a steel beam, locking plaintiff in a bathroom, referring to plaintiff as a "retard" and "idiot," lighting the shrink wrap on fire when plaintiff could not free himself, suggesting plaintiff "jump off

1

a bridge" and other cruel and malicious acts to harm plaintiff and take advantage of his disability. (*Id*.) Plaintiff alleges that on July 7, 2004, defendants fired him ostensibly for leaving work fifteen minutes early, even though he had been give permission to do so by the supervisor at the time. (*Id*. ¶ 20.) Plaintiffs commenced this action on May 1, 2006.

Defendants learned in early 2008 of the existence of a private investigator's report prepared shortly after the alleged events and requested a copy from plaintiffs' counsel. (Defs. Mem. Supp. Mot. Compel at 5.) Defendants believe the report contains information relevant to the defense and was voluntarily disclosed by plaintiffs to the United States Equal Employment Opportunity Commission (the "EEOC") and, upon information and belief, to the United States Department of Justice (the "DOJ"). (*Id*.) Plaintiffs state that the report was prepared on behalf of plaintiffs' former counsel in anticipation of this litigation. (Letter Brief from Gerald Jay Resnick, Resnick, Nirenberg & Cash, P.C., Attorney for Plaintiffs, to Hon. William C. Conner, U.S.D.C., dated June 6, 2008, ("Resnick Ltr.") at 4.) Plaintiffs also state that a copy of the report was supplied to the EEOC in support of the charge of discrimination filed with that office, and that the report was not published to any other party. (*Id*.)

## DISCUSSION

I. **Legal Standard**

Motions to compel are "entrusted to the sound discretion of the district court" in keeping with the traditional rule that "[a] trial court enjoys wide discretion in its handling of pre-trial discovery." *In re Fitch, Inc.*, 330 F.3d 104, 108 (2d Cir. 2003) (internal quotation marks and citation omitted).

Under the Federal Rules of Civil Procedure, the scope of discovery extends to "any

2

nonprivileged matter that is relevant to any party's claim or defense." FED. R. CIV. P. 26(b)(1). The relevancy requirement "has been construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978).

## II. Work Product Privilege

### A. Qualification as Work Product

The Supreme Court, in *Hickman v. Taylor*, held that notes taken by the defendant's attorney during interviews with witnesses to the event that eventually gave rise to the lawsuit were not discoverable by the plaintiff because

> it is essential that a lawyer work with a certain degree of privacy, free from unnecessary intrusion by opposing parties and their counsel. Proper preparation of a client's case demands that he assemble information, sift what he considers to be the relevant from the irrelevant facts, prepare his legal theories and plan his strategy without undue and needless interference. That is the historical and the necessary way in which lawyers act within the framework of our system of jurisprudence to promote justice and to protect their clients' interests. This work is reflected, of course, in interviews, statements, memoranda, correspondence, briefs, mental impressions, personal beliefs, and countless other tangible and intangible ways—aptly . . . termed . . . the "Work product of the lawyer."

329 U.S. 495, 510-11 (1947) (internal citation omitted). Federal Rule of Civil Procedure 26(b)(3) codifies the principles articulated in *Hickman*. *See United States v. Adlman*, 134 F.3d 1194, 1197 (2d Cir. 1998). The Rule states that documents "prepared in anticipation of litigation or for trial" are discoverable only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means." FED. R. CIV. P. 26(b)(3)(A)(ii). Even where this showing has been made, however, the Rule provides that

the court "must protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of a party's attorney or other representative concerning the litigation." *Id*. at 26(b)(3)(B).

The party asserting work product protection bears the burden of demonstrating that the doctrine applies and that it has not been waived. *See In re Grand Jury Subpoena Dated July 6, 2005*, 510 F.3d 180, 183 (2d Cir. 2007); *Allied Irish Banks, p.l.c. v. Bank of Am., N.A.*, 2008 U.S. Dist. LEXIS 23605, at *29 (S.D.N.Y. Mar. 26, 2008). The burden is a "heavy one," and three conditions must be met to earn work product protection. *Allied Irish Banks, p.l.c.*, 2008 U.S. Dist. LEXIS 23605, at *29. "The material must (1) be a document or a tangible thing, (2) that was prepared in anticipation of litigation, and (3) was prepared by or for a party, or by his representative." *Id*. The work product doctrine protects not only materials which are prepared by attorneys themselves, but also by their agents. *See Spanierman Gallery v. Merritt*, 2003 U.S. Dist. LEXIS 22141, at *6 (S.D.N.Y. Dec. 9, 2003) (citing *United States v. Nobles*, 422 U.S. 225, 238-39 (1975)). Agents include those who are enlisted by legal counsel to perform investigative or analytical tasks to aid counsel in preparing for litigation. *Kayata v. Foote, Cone & Belding Worldwide, L.L.C.*, 2000 WL 502859, at *2 (S.D.N.Y. Apr. 26, 2000). A document is eligible for work product privilege if it was prepared "in anticipation of litigation," meaning that "in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." *Adlman*, 134 F.3d at 1202 (internal quotation marks and citation omitted).

The private investigator's report is obviously a document. Plaintiffs assert "there is little doubt that the investigation report was prepared on behalf of the plaintiffs' former counsel and 'in anticipation of litigation.'" (Resnick Ltr. at 4.) The Court agrees. We reviewed the investigative

4

report *in camera* on May 23, 2008 and determined that it was clearly prepared on behalf of plaintiffs' former counsel in anticipation of litigation. It records the investigator's findings based on his interviews of witnesses to the incidents alleged in the Second Amended Complaint. *See In re Dow Corning Corp.*, 261 F.3d 280, 282-83 (2d Cir. 2001) (submitting documents to district court for in camera review of attorney-client and work product claims); *In re Richard Roe, Inc.*, 168 F.3d 69, 71 (2d Cir. 1999) (reviewing documents in camera to evaluate claims of attorney-client and work product protection). The private investigator was acting as plaintiffs' attorney's agent, as the report was prepared at his bequest. *See Kayata*, 2000 WL 502859, at *2 (because it was reasonable that the employer defendant's counsel, having been apprised of the filing of a charge of discrimination with the EEOC by the employee plaintiff, would manage the investigation of that charge with an eye toward litigation, the documents generated by the Vice President of the employer during the course of the investigation that her counsel directed her to perform were protected by the work-product doctrine). Although in our brief review of the report, we saw no reason why it would be helpful to the defense or why plaintiffs might wish to withhold it, we conclude that it is subject to work product protection. We therefore must consider whether plaintiffs have waived this protection by producing the document to the EEOC and whether defendants have shown a substantial need for the report.

**B.** **Waiver**

Work product immunity is not automatically waived by production to a third party; it is waived when its production to another is inconsistent with the protection. *See Spanierman Gallery*, 2003 U.S. Dist. LEXIS 22141, at *7-8. Work product may be shown to others when there is some good reason to show it; however, once a party voluntarily discloses work product to an adversary, the

5

need for the privilege disappears. *See id.* at *8. Even disclosure to a non-adversary will result in waiver if the disclosure "substantially" or "materially" increases the likelihood that an adversary will obtain the information. *Id*. (citing *Bank of Am., N.A. v. Terra Nova Ins. Co.*, 212 F.R.D. 166, 170 (S.D.N.Y. 2002).

The concept of the "joint defense" privilege in which there is no waiver in production of work product to an ally in litigation, applies between private parties and the government as well. *Information Res., Inc. v. Dun & Bradstreet Corp.*, 999 F. Supp. 591 (S.D.N.Y. 1998) (citing *Castle v. Sangamo Weston, Inc.*, 744 F.2d 1464 (11th Cir. 1984) (transfer from attorneys for private plaintiff to attorneys for EEOC, while both are engaged in preparation of a joint trial)).

> The existence of common interests between transferor and transferee is relevant to deciding whether the disclosure is consistent with the nature of the work product privilege. . . . So long as transferor and transferee anticipate litigation against a common adversary on the same issue or issues, they have strong common interests in sharing the fruit of the trial preparation efforts. Moreover, with common interests on a particular issue against a common adversary, the transferee is not at all likely to disclose the work product material to the adversary.

*Id.* at 591-92 (citing *United States v. A.T. & T. Co.*, 642 F.2d 1285, 1299-1300 (D.C. Cir. 1980)).

However, courts distinguish this privilege from instances in which a party voluntarily discloses material to a government agency to incite it to attack an adversary. In *Information Resources*, the plaintiff submitted documents to the DOJ, Antitrust Division, the Canadian Competition Tribunal and the European Commission in its efforts to induce action by those antitrust authorities against the defendants in plaintiff's private treble-damage lawsuit. 999 F. Supp. at 591. The court distinguished the joint defense privilege and determined that the plaintiff and the government authorities were neither adversaries nor allies when plaintiff submitted the documents; rather plaintiff sought to persuade the agencies to initiate actions to disadvantage its competitor and

perhaps advantage plaintiff with collateral estoppel from a favorable government litigation. *Id*. at 593. The court determined that protection was waived for materials submitted voluntarily to stimulate desired official action. *Id*.

Defendants argue that plaintiffs voluntarily disclosed the report to third parties and that constitutes a waiver of the privilege. (Defs. Mem. Supp. Mot. Compel at 11.) Plaintiffs rely on *Spanierman Gallery* and *Sidari v. Orleans County*.

In *Spanierman Gallery*, the court concluded that the defendant waived work product protection when he voluntarily produced work product materials to the FBI in an effort to secure its assistance in retrieving a painting and to encourage it to initiate an investigation of plaintiff. 2003 U.S. Dist. LEXIS 22141, at *14-15. The court noted that the FBI and the defendant were not adversaries, however it determined that they did not share a common interest. *Id*. at 15. The defendant's interest in prevailing against plaintiff was to secure the return of the painting; the FBI's interest was its obligation to investigate suspected criminal activity. *Id*. The court also noted that production to the FBI substantially increased the likelihood that privileged information would be secured by the defendant's adversaries because the documents were not identified as "privileged," no agreement was reached with the FBI to treat the information as privileged and the defendant did not seek to retrieve the documents from the FBI until two years after they had been produced. *Id*.

In *Sidari*, the plaintiffs' counsel provided a privileged recording to the United States Attorney's Office for use in the criminal trial of one of the defendants and to the F.B.I. 2000 U.S. Dist. LEXIS 15126, at *19 (W.D.N.Y. Oct. 4, 2000). The United States Attorney's Office believed that the defendant would testify as a defense witness in another criminal trial, and they intended to utilize the recording and transcript to impeach the defendant on cross-examination. *Id*. The court

determined that the plaintiffs waived the work product privilege because in both instances the disclosure substantially increased the likelihood that the recordings would be disclosed to the public and to the defendants because there was apparently a confidentiality agreement. *Id.* at *24-25.

However, the Second Circuit has refused to adopt a *per se* rule that all voluntary disclosures to the government waive work product protection. *See In re Steinhardt Partners L.P.*, 9 F.3d 230 (2d Cir. 1993). In *Steinhardt Partners*, the court determined that defendants disclosure of legal memoranda to the SEC was a waiver because the SEC stood in an adversarial position relative to defendant when it requested assistance. *Id*. at 234. The determinative fact in analyzing the adversarial nature of the relationship was that the defendant knew that it was the subject of an SEC investigation, and that the memorandum was sought as part of this investigation. *Id*. However, the court noted that establishing a rigid rule that voluntary disclosure constituted a waiver of the privilege would fail to anticipate situations in which the disclosing party and the government may share a common interest in developing legal theories and analyzing information, or situations in which the disclosing party and the government entered into an agreement to maintain the confidentiality of the disclosed materials. *Id*. at 235.

The EEOC is the government agency that enforces federal employment discrimination laws. Filing a charge with the EEOC is a jurisdictional prerequisite to a private civil action under Title VII and the ADA. *See Nweke v. Prudential Ins. Co. of Am.*, 25 F. Supp. 2d 203, 214 (S.D.N.Y. 1998). The EEOC may also decide to bring a government action against an employer that engages in discriminatory practices. In this case, the EEOC rendered a probable cause determination in favor of plaintiff. (Resnick Ltr. at 4.) Plaintiffs argue that there was a common interest between plaintiffs and the EEOC and that they believed the EEOC was acting at all times on plaintiffs' behalf and

disclosing the report to the EEOC would not lead to disclosure to the public. (*Id*.) This is not a situation similar to *Spanierman Gallery* and *Sidari*. Here, plaintiffs and the EEOC were aligned in their common interest to analyze the facts of the incident and prevent alleged discriminatory practices by or on behalf of defendants; the EEOC was certainly not in an adversarial position with respect to plaintiffs. *See Int'l Design Concepts, Inc. v. Saks Inc.*, 2006 WL 1564684, at *3 (S.D.N.Y. June 6, 2006) (determining business and its auditor aligned insofar as they both seek to prevent, detect and root out corporate fraud). *But see In re Leslie Fay Companies, Inc. Securities Litigation*, 152 F.R.D. 42, 45 (S.D.N.Y. 1993) (Conner, J.) (finding that the Audit Committee and the SEC stood in an adversarial position when the Committee produced an audit report to the SEC because the Committee knew that its company was the subject of an SEC investigation, that the report would assist the SEC in that investigation and the SEC's request came from the SEC Enforcement Division). Plaintiffs need not have intended to induce the EEOC to assert its own action against defendants for a common interest to exist. (*See* Defs. Reply Mem. Supp. Mot. Compel at 4-5.)

Plaintiffs could not bring the ADA claim in this Court without filing a charge with the EEOC. And the EEOC could not make a determination of probable cause without all the relevant evidence. Defendants argue that the report was issued before the EEOC made a probable cause determination and before the case reached the EEOC legal staff. (*Id*. at 5.) Naturally that would be true because the EEOC needed the information to make such a determination.

In addition, there is very little chance that the report would be disclosed to defendants not only because plaintiffs and the EEOC were aligned in interest but also because defendants were required to produce an authorization for release from plaintiffs before the EEOC would produce the report. Indeed, when defendants requested an authorization, plaintiffs specifically notified the EEOC that the

9

report was privileged and should not be produced to defendants. (Resnick Ltr., Ex. C.) For this reason it does not matter, as defendants argue, that plaintiffs did not request deletion of the report from the EEOC file until more than two and a half years after it was disclosed and that the report bore no indication that it contained privileged information. (Defs. Mem. Supp. Mot. Compel at 13.) Plaintiffs have not shown a conscious disregard for the possibility that defendants would obtain access to the report. (Defs. Reply Mem. Supp. Mot. Compel at 7.)

### C. The "At Issue" Waiver Doctrine

Defendants argue that plaintiffs' allegations would likely be addressed in the investigator's report, and that plaintiffs' counsel makes specific reference to the report in claiming that the alleged events occurred. (Defs. Mem. Supp. Mot. Compel at 11.) Therefore, defendants argue that the report should be produced pursuant to the "at issue" waiver doctrine. (*Id.*)

The work product protection can also be waived when the party invoking the privilege elects to put the privileged documents "at issue." As the Supreme Court noted:

> by electing to present the investigator as a witness, [defendant] waived the privilege with respect to matters covered in his testimony. Respondent can no more advance the work-product doctrine to sustain a unilateral testimonial use of work-product materials than he could elect to testify in his own behalf and thereafter assert his Fifth Amendment privilege to resist cross-examination on matters reasonably related to those brought out in direct examination.

*Nobles*, 422 U.S. at 239-40. However, as the Second Circuit made clear, the Court in *Nobles* found it crucial that the defense elected to make affirmative use of the report and then shield it from scrutiny. *See In re Grand Jury Proceedings*, 219 F.3d 175, 191 (2d Cir. 2000). In *In re Grand Jury Proceedings*, the court determined that the privilege was not waived where the witness and counsel

were compelled to testify before the grand jury. *Id*. Counsel had not waived the privilege as to his assistant's notes with respect to a meeting simply by answering the government's questions about the meeting. *Id*. By claiming that the events alleged in the Second Amended Complaint actually occurred, plaintiffs can not possibly have put the report "at issue." The allegations in the Complaint are not based on the investigator's report, but on plaintiff's account of the incidents he experienced while working for defendants. This is not a case in which the plaintiffs are attempting to use the report as both a sword and a shield by using the privilege to prejudice defendants' case or to disclose some selected communications or documents for self-serving purposes. *See United States v. Bilzerian*, 926 F.2d 1285, 1292 (2d Cir. 1991) (determining that the attorney-client privilege was implicitly waived where defendant's testimony that he thought his actions were legal would have put in issue the basis for his understanding of the law, and therefore his conversations with counsel regarding the legality of his schemes would have been directly relevant). As discussed below, the information in the report is obtainable by other means, and unless plaintiffs intend to rely on the investigator's findings by calling him as a witness, plaintiffs' have not put his report "at issue."

### D. <u>Substantial Need</u>

A party seeking discovery of attorney work product must show "substantial need," for fact work product, and work product that shows "mental impressions, conclusions, opinions, or legal theories of an attorney . . . is to be protected unless a highly persuasive showing [of need] is made." *In re Grand Jury Proceedings*, 219 F.3d at 190 (internal quotation marks and citation omitted; alteration in original). "Substantial need" cannot be shown where persons with equivalent information are available for interrogation and/or deposition. *See Tribune Co. v. Purcigliotti*, 1998

WL 175933, at *4 (S.D.N.Y. Apr. 14, 1998). In *Purcigliotti*, the court determined that memoranda conveying facts and attorneys' perceptions of and opinions on those facts were "opinion work product" and entitled to heightened protection. *Id*. The memoranda were entitled to protection even to the extent that they are deemed factual because defendants could not show substantial need and undue hardship as the attorneys were available to be deposed. *Id*.

Defendants do not argue that they have a substantial need for the report or that they face undue hardship because they can not obtain the substantial equivalent of the report by other means. *See* FED. R. CIV. P. 26(b)(3)(A)(ii) (documents "prepared in anticipation of litigation or for trial" are discoverable only if "the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their substantial equivalent by other means"). As defendants acknowledge in their brief, "[i]t is inconceivable that such horrific facts could have occurred without numerous employees having witnessed such events." (Defs. Mem. Supp. Mot. Compel at 11.) Defendants make no argument that these employees are now unavailable to be interviewed or deposed, and therefore have not established that the report is discoverable. *See Kayata*, 2000 WL 502859, at *2 (counsel to plaintiff made no showing that plaintiff has a substantial need of the materials generated during the investigation and has not demonstrated that she is unable, without undue hardship, to obtain the substantial equivalent of the subject investigative materials by means other than their disclosure by defendants). Therefore, we do not think it would substantially prejudice defendants or significantly impair their ability to defend themselves. (*See* Defs. Reply Mem. Supp. Mot. Compel at 8.)

## CONCLUSION

For all of the foregoing reasons, defendants' motion to compel production of a private investigator's report pursuant to FED. R. CIV. P. 37(a) is denied.

SO ORDERED.

Dated: White Plains, New York
       June 18, 2008

*William C. Conner*
Sr. United States District Judge